The opinion of the court was delivered by
Tilchman, C. J.
Our act of assembly of the 21st of March, 1772, is the same in'substance as the statute 11 Geo. 2. c. 19. s. 1, from which it was copied very nearly verbatim. Where any tenant shall fraudulently or clandestinely convey away, or carry off or from the demised premises, his goods or chattels, to prevent the landlord or lessor from distraining the same for arrears of the reut reserved, it shall be lawful for the landlord or lessor, or any other person or persons by him for that purpose lawfully empowered, within the space of thirty days next ensuing such conveying away .or carrying off such goods or chattels, to take and seize such goods and chattels, wherever the same may be found, as a distress for the said arrears of such rent, &e.i&c.
A removal of the goods in the night, is in itself clandestine, and sufficient evidence of fraud. But I will not say that no removal, except in the night, can be fraudulent under the act of assembly. On the contrary, I can easily imagine a case which would be fraudulent. Suppose the landlord should come to the premises for the purpose of distraining, and should refrain from a distress, on the tenant’s promising that he would pay the rent, or give satisfactory secury by a certain hour, and in the mean time his goods should remain where they were; and after this should remove the goods as soon as the landlord’s back was turned, and all this in the day time. This would be a palpable fraud. But where there is no evidence of more than a simple removal in the day time, without the knowledge of the landlord, there is no ground for presumption of fraud, nor will the law suffer it to be presumed. The tenant is not bound to give notice to the landlord that he is about to remove his goods, nor is he under any obligation not to remove them. It is the landlord’s business to be vigilant. He has a right to distrain whenever the rent has become due; and, if he neglects it, he runs the risk of losing this extraordinary remedy with which the law has favoured him. If it had been the intent of the act of assembly, to consider every removal as fraudulent which was made after the rent became due, it would have been easy to say so; but the expressions fraudulent or clandestine, show that something more *219 Was intended. In the case before us, the jury, from the manner in which it was submitted to them, might have found the removal fraudulent or not, according to conjecture, whim, or caprice, — for there was no fact to enlighten them. They ought, therefore, to have been told, that the evidence did not warrant a legal presumption of fraud.
2. But is this a case within the act of assembly, no rent being in arrear at the time the goods were removed? In my opinion, it is not. The removal, to bring it within the law, must be, with an intent to prevent the landlord from distraining for ar-reara of rent; which cannot be, when there is no arrear, and there can be no arrear before the rent is-due. Suppose, now, the tenant should remove his goods thirty-one days before the rent is due. It will hardly be contended, that in such case the landlord could distrain within thirty days from the time qf removal, because the rent would not be due at the end of thirty days, and yet there would be a right to distrain within thirty days, unless the act of assembly is construed, so as as to be confined to cases where the goods were removed after the rent was due. For that reason, the English statute, from which ours was taken, has been held to be confined to a removal of the goods, after the rent is actually in arrear. It must be confessed, that our act of assembly does not go so far for the protection of landlords, as justice and good policy seem to require. But that is a consideration for the legislature, before whom, I believe, the subject is now depending, and not for this court. Our duty is to construe the law, and not to remedy it, should we think it defective.
I am of opinion that this judgment should be reversed, and a venire de novo awarded.*
Judgment reversed, and a venire facias de novo awarded.

 The subjoined ease, concerning the fraudulent or clandestine removal of goods, by the tenant, and embracing also a point relative to the jurisdiction of the Court of Common Pie as, having been omitted in its proper place, is here inserted:
[Philadelphia, December, 1823.]
HOOPS and another against CROWLEY and others.
1ST ETOtOK.
Ebkob to the Common Pleas of Philadelphia county.
The opinion of the court was delivered by
TiiSHMAN, C. J. In this action, the defendants in error were plaintiffs below. It is a special action on the case for a neglect of duty in the defendants, constables of the city of Philadelphia, who were employed by the plaintiffs to distrain the goods of a certain WilUa-m Gamgnes, for arrears of rent due to the plaintiffs. It appeared in evidence, that the goods were removed by Garrigues after the rent was due. He began to remove them in the forenoon, but did. not finish till after night. Before he removed them, he told the plaintiffs that he intended to remove them, and would pay the rent as soon as he could, which he. expected would be in a few days. There was some doubt, from the evidence, whether the plaintiffs consented to the removal of the goods, or told the tenant they expected he would first secure *220 the rent; but there was no evidence of any kind of secrecy in the removal. The preside nt of fhe Court of Common Pleas charged the jury, “ That, if there was no consent of the landlord, the removal of the goods by the tenant was fraudulent or clandestine-, and the landlord had a right to follow the goods.” To this charge, the counsel for th'e defendant's e.xcepted. By the act of the 21st of March, 1772, section 5th, it is enacted, that if any lessee for life or term of years, “shall fraudulently or clandestinely' convey- or carry off, or from the demised premises, his goods and chattels, with intent to prevent the landlord or lessor from distraining the same for the arrears of rent, it shall be lawful for such lessor or landlord, or any other person or persons by him for that purpose lawfully empowered, within the space of thirty days, next ensuing- such conveying away or carrying off such g-oods, &c. to take and seiac'thc same wherever they may be found, &c.”
The construction given to this act by the counsel for the plaintiffs is, that where the rent is not paid, every removal of the tenant’s goods is fraudulent or clandestine, except it be with the consent of the landlord. This construction is very convenient for landlords, but docs not appear to be consistent with the words or intent of the act. Tlic expressions are plain enough. In order to justify a distress otf the premises, there must he a fraudulent or clandestine removal of the goods. Whether the words fraudulent and clandestine are synonimous, need not now be determined ; because, in this case, there was no other evidence of fraud than the removal. A clandestine is a secret removal, and it is not easy to conceive, how a removal in broad day can be secret, although, under some circumstances, it may perhaps be fraudulent. But by the manner in which the case was put to the jury, they were to suppose that the removal must be fraudulent or clandestine, unless with the consent of the landlord, even though the landlord ivas informed of the. intention to remove. I can perceive nothing in the act of assembly to warrant such a posilion, and am therefore of opinion that the charge was erroneous.
There was another question made in this cause, viz. whether the Court of Common Pleas had jurisdiction ? The point was hut faintly urged by the counsel for the plaintiff in error, but he expressed a desire that the court should give an opinion on it.
By the act of the 20th of March, 1810, section 1st, (Purd. Dig. 353,) “ the. justices of the- peace have jurisdiction of all causes of action arising from contract express or implied, in all cases', where the sum demanded is liot above one hundred dollars, except in cases of real contract, where the titles to lands or tenements may come in question, or actions upon promises of marriage.” By the 26th section of the same, act, if any person -shall prosecute a suit for any debt or demand, made cognizable by that act, by a justice of the peace, in any other manner than before a justice, and shall obtain a verdict or judgment therein, which, without costs of suit, shall not amount to more than one hundred, dollars, not having caused an oath or affirmation to be made, before the obtaining (he writ of summons or capias, and having- filed tlic same in the prothonotaiy’s office, “.that the persons making such oath or affirmation, did truly believe the debt due or damages sustained, ex- *221 ceoded flic sum of one hundred dollars” — the person so prosecuting shall not receive costs in such suit. It is clear, that by this act any man might prosecute a suit under one hundred dollars, in the Court of Common Picas, paying* his own costs. Afterwards, the. District Court for the city and county of Philadelphia was established, by the act.of the 30th of March, ííill, and, by the 2d section of the said act, the original jurisdiction of the Court of Common Pleas of the said city and county in all o.ivii actions, where the sum in controversy exceeds one hundred dollars, was abolished and f. e jurisdiction vested in the. District Court. This act, so far from talcing away th- jurisdiction of the Court, of Common Pleas, in cases where the sum in controversy does not exceed one hundred dollars, does, by direct implication affirm it. Put the plaintiff remains liable to the terms imposed on him by the act of the 20th of March, 1810, the object of which was to discharge suits in the Common Pleas in cases where the justice had jurisdiction, that is to say, ho cannot iccovu* his costs.
In the city and county of Philadelphia, therefore, every man has his choice in easts where the sum in controversy does not exceed one hundred dollars, to sue before a magistrate and recover his costs, or to sue in the Common Pleas and pay his own costs. In the case before us, the mattc.i in controversy was less than one hundred dollars, and therefore toe Court of Comm m Pleas bad jurisdiction.
I am of opinion, on the whole, that for the error in the charge of the court, the judgment should be reversed, and a venire da novo awarded.
Judgment reversed, and a venire facias de novo awarded.